UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GARY E. HAHN,

Plaintiff,

v.

LM INSURANCE CORPORATION,

Defendant.

**REPORT AND RECOMMENDATION**

Case No. 1:25-cv-148-MAV-JJM

Plaintiff Gary Hahn commenced this action against LM Insurance Corporation ("LM", incorrectly sued as Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company) in connection with a claim for property damage at his multi-family residential property at 193 O'Connell Street in Buffalo, New York. Complaint [1-2] [1]. Hahn alleges that LM failed to pay what was due under his homeowners policy for necessary repairs after a severe winter storm in December 2022. Id.

Before the court is LM's motion for discovery sanctions [27] pursuant to Fed R. Civ. P. ("Rules") 37 and 41, which has been referred to me by District Judge Meredith A. Vacca for initial consideration [29].[2] Having reviewed the parties' submissions [27, 30, 31], for the following reasons I recommend that the motion be denied, without prejudice.

---

1 Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

2 Generally, "Rule 37 orders imposing discovery sanctions are nondispositive under *Hoar*". Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research, 768 F. App'x 141, 143 n. 1 (2d Cir. 2019) (*citing* Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990)). However, to the extent the motion seeks dismissal of plaintiff's complaint, such relief is dispositive. *See* 28 U.S.C.A. §636(b)(1)(A). In this case, Judge Vacca directed me to issue a Report and Recommendation for her consideration on all issues. [29].

## BACKGROUND

On April 4, 2025, I issued a Case Management Order [11] which, among other things, set a fact discovery deadline of July 18, 2025, and outlined my procedures for the resolution of discovery disputes. On April 11, 2025, LM's attorney, Ashlyn Capote, served document demands on Hahn's attorney, Kevin Stocker, seeking various items of information relating to his alleged damages [20-2].

On May 20, 2025, Stocker served responses to those demands [20-3]. On May 30, 2025, Stocker forwarded links to Hahn's public adjuster Jodie Papa's file materials [20-4]. Capote contended that these materials were incomplete. The attorneys engaged in telephone discussions regarding the issue on June 9 and 24, 2025 [20-1], ¶8.

On June 25, 2025, the attorneys held a joint telephone call with Hahn's contractor, Mark Renkas of Design Restoration [20-5]. Mr. Renkas indicated that he had retained numerous subcontractors to perform work at the premises. After the call, Renkas forwarded some site photographs and a supplemental estimate [20-6]. On June 30, 2025, Capote sent a letter to Stocker itemizing various allegedly outstanding discovery, including contracts, estimates, invoices from any subcontractors [20-7]. The parties also discussed the issue in a telephone call on July 8, 2025 [20-1], ¶13. On July 16, 2025, Capote made a follow-up telephone call. Id., ¶15.

On July 23, 2025, Capote filed a letter [14] with the court raising the discovery deficiencies and requesting an extension of the fact discovery deadline to resolve them. Upon LM's renewed request [16], I set a teleconference for July 31, 2025 [17]. At that teleconference, Capote stated that she was awaiting various invoices and/or receipts so that LM could proceed to depositions [18]. Stocker replied that he would provide some "miscellaneous" checks amounting to $25,000 from the general contractor, but that he had "pretty much" turned over everything

they had. Id.[3] I agreed to extend the discovery deadlines by two months, and issued an Amended Case Management Order [19].

On August 19, 2025, Capote sent a second letter to Stocker, stating that there was outstanding correspondence relating to the damages and/or repairs [20-12]. On September 4, 2025, Stocker sent a file containing "all [the Hahns'] emails" (1,551 of them) in advance of plaintiff's deposition, which was scheduled for September 8, 2025 [20-13]; [20-1], ¶19. Depositions of Gary Hahn, Jodie Papa, and Sarah Hahn were then conducted [31] at 3.

At his deposition, Gary Hahn testified that he did not remember seeing LM's actual discovery demand and had not been asked to provide some of the specific requests, but stated that he had provided all emails with tenants from October 2020. *See* [23-2] at 234-38. For her part, Sarah Hahn testified that she had provided emails having to do with "construction, remediation, and insurance", but that she had not been presented with a request for correspondence with tenants [23-3] at 153-56.

By letter dated September 17, 2025, Capote demanded that Stocker produce the documents that his witnesses reviewed in preparing for their depositions, as well as the document(s) that Sarah Hahn (according to her testimony) created to track repairs, and that counsel present the discovery demands in full to the Hahns [20-14] at 4-5.

On September 19, 2025, LM filed a motion to compel [20], seeking an order compelling Hahn to produce "complete responses" to its discovery demands, including the documents its witnesses used to prepare for their depositions and to track repairs, as well as awarding preclusion and costs [20-1] at 1.

---

3 Unofficial transcription of audio recording.

Stocker responded that he, Ms. Papa, and Mr. Renkas had provided "copious" amounts of documents to LM, though he had not yet provided documents responsive to the post-deposition requests due to the death of Hahn's wife [22-5] at 5.[4] Stocker argued that any proof of payment to Renkas' subcontractors on the project was irrelevant, but that, in any case, those documents were in the possession of non-party Design Restoration, who was now represented by separate counsel. Id. at 8-11.

On October 21, 2025, I heard oral argument on the motion to compel [24]. Capote argued that she had still not received complete discovery responses, and that while LM had subpoenaed certain documents from Mr. Renkas and was working with his attorney, there were repair receipts and SBA loan documents in the Hahns' possession that had not been produced. Id. Stocker disagreed, stating that he had produced a box full of materials which was "everything we have", and that his clients were "well informed" about the requests. Id.[5] Capote claimed that Stocker had made such representations before, only to find out that there were more documents which he had not requested from his clients. Id. The Hahns had also not yet produced any emails with tenants, which are relevant to Hahn's lost rent claim. Id.

At the conclusion of that argument, I stated as follows: "I'm going to extend the Case Management Order, the discovery cutoff deadline. I think good cause has been shown . . . . Secondly, I find that since no objections to the discovery demands served in April were filed, any objections have been waived. Third, I'm going to order that the discovery demands served in April must be completely complied with by December 12th, failing which the parties should understand that the complaint may be dismissed. I'm not going to go chapter and verse into

---

4 Such documents have seemingly since been provided. *See* [30-4], ¶15.

5 Unofficial transcription of audio recording.

every single item of dispute but I find very compelling the testimony of the Hahns indicating just from last month that they had not even seen some of these discovery requests so that's my ruling. You should proceed accordingly. As far as the request for attorneys fees, I'm going to hold that in abeyance to see how things proceed from here on out. But it certainly is a possibility that I will be making an award of some fees. I'm not doing that now. I may not, I may". [31-2] at 13-14.

Later that day I issued a Text Order [25] stating that "defendant's motion is granted in part as stated in my oral ruling delivered today and documented in this order. Plaintiff must serve complete responses to defendant's April 11, 2025 document demands on or before December 12, 2025. I find that any objections to those demands have been waived. **Plaintiff's failure to fully respond will result in sanctions, which may include dismissal of his complaint.** In addition, I find good cause to further extend the deadlines of the Amended Case Management Order . . . . Finally, I hold in abeyance defendant's request for fees associated with this motion".

By letter to Capote dated October 29, 2025 [27-2], Stocker stated that he was "following up to determine what, if any, documents you believe are still due from my clients". He stated that he had conferred with Gary Hahn, Sarah Hahn, and Jodie Papa, that they had "provided all responsive documents", and that the SBA loan in question was never consummated. On December 8, 2025, Stocker emailed Capote a copy of a mechanic's lien by one of the subcontractors and asked what she "perceive[d] to be outstanding from my clients as far as discovery responses" [27-3]. Capote responded that "the time for good faith discussions about Liberty's demands has passed" and that LM's position had been previously outlined. Id.

On December 12, 2025, Stocker sent Capote a flash drive apparently containing "all the documents I have been provided" including a "paid-in-full letter" for a $19,500 SBA

loan relative to asbestos remediation [27-4]. On January 7, 2026, LM filed the pending motion [27].

**DISCUSSION**

In order to prevail on this motion, LM must demonstrate that Hahn has failed to fully comply with its April 11, 2025 request for production of documents. LM suggests that Hahn's "fail[ure] to provide complete responses to the April 11, 2025 demands was already determined by this Court . . . . It bears repeating that the Court had already determined that responsive items existed that were not produced". LM's Memorandum of Law [27-6] at 6, 12. However, I made no such determination. Rather than "going . . . chapter and verse into every single item of dispute", I merely ordered full compliance by December 12, 2025. [31-2] at 14; [25]. It remains LM's burden to persuade me that Hahn has not done so.

LM cites "two poignant examples that demonstrate that Hahn's conduct is willful and sanctions should be awarded" - namely, his "Refusal to Produce Documents Related to Plaintiff's SBA Loan", and his "Refusal to Produce Emails with Tenants". LM's Memorandum of Law [27-6] at 10, 11. LM does not identify the document request to which the SBA loan would be responsive. For example, although LM requested "all documents that support your claim for damages" ([20-2] at 4, ¶1), Hahn states that he has "not sought damages related to the SBA loan". Hahn Declaration [30-3], ¶17.

As for e-mails with Hahn's tenants, such e-mails would clearly be responsive to LM's request for "all of the correspondence between the Insured [and] tenants between October 1, 2020 - Present" ([20-2], ¶12). However, Gary Hahn states that "[a]s far as I am aware, all relevant documents that pertain to [LM's] discovery demands have been turned over. This includes the emails that I had to have a professional come to get off my computer due to my lack

of skills . . . . The emails that I may have had with tenants would have been included in the emails which were downloaded from my computer". Gary Hahn Declaration [30-3], ¶¶19-20. *See also* Sarah Hahn Declaration, [30-4], ¶17 ("I believe that all emails of my father and I regarding or with the tenants were downloaded and previously provided").

LM argues that "[s]urely if Hahn had produced those emails then Hahn would be able to explain where in the production they are. But they are not there because they were never produced". LM's Memorandum of Law [27-6] at 11. However, "[s]tatements by counsel in briefs are not evidence", SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp. 2d 301, 315, n. 6 (S.D.N.Y. 2000), and LM, which bears the burden of proof on this motion, has not offered evidence supporting its contention that the emails were not produced. Such evidence could consist of an affidavit by someone stating that they have reviewed all of Hahn's document production and found no e-mails or other correspondence between Hahn and his tenants.

## CONCLUSION

For these reasons, I recommend that LM's motion for sanctions [27] be denied, without prejudice to renewal upon a proper evidentiary showing. Unless otherwise ordered by District Judge Vacca, any objections to this Report and Recommendation must be filed with the clerk of this court by August 19, 2026. Any requests for extension of this deadline must be made to Judge Vacca.

A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented

to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 5, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge